1  BAKER BOTTS L.L.P.
   Robert C. Scheinfeld (Pro Hac Vice)
2  Eliot D. Williams (Pro Hac Vice)
   Eric J. Faragi (Pro Hac Vice)
3  30 Rockefeller Plaza, 44th floor
   New York, NY 10112
4  (212) 408-2500
   (212) 408-2501 (fax)
5  robert.scheinfeld@bakerbotts.com
   eliot.williams@bakerbotts.com
6  eric.faragi@bakerbotts.com

7  Richard Clegg (SBN #211213)
   Law Office of Richard Clegg
8  501 West Broadway, Suite 800
   San Diego, CA 92101
9  (619) 400-4920
   (619) 400-4929 (fax)
10 rick@rclegglaw.com

11 Attorneys for Defendant
   SEAMLESS NORTH AMERICA, LLC

12

13                    UNITED STATES DISTRICT COURT

14                    SOUTHERN DISTRICT OF CALIFORNIA

15

16  AMERANTH, INC.,                    | Case No. 3:12-cv-737-JLS (NLS)

17              Plaintiff,             | **SEAMLESS NORTH AMERICA, LLC'S FIRST AMENDED ANSWER AND**
18       v.                           | **COUNTERCLAIMS TO THE FIRST AMENDED COMPLAINT OF PLAINTIFF**
19  SEAMLESS NORTH AMERICA, LLC,       | **AMERANTH, INC.**

20              Defendant.

21  SEAMLESS NORTH AMERICA, LLC.,

22              Counter-Plaintiff,

23       v.

24  AMERANTH, INC.,

25              Counter-Defendant.

26

27

28

Defendant Seamless North America, LLC ("Seamless") files this Answer and Counterclaims to the First Amended Complaint for Patent Infringement served May 16, 2012 ("First Amended Complaint") of plaintiff Ameranth, Inc. ("Ameranth").

## I. ANSWER

Seamless responds to the allegations in each of the corresponding numbered paragraphs of the First Amended Complaint below. To the extent the headings of the First Amended Complaint are construed as allegations, they are each denied.

### Parties

1. Seamless lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 1, and on that basis denies them.

2. Denied, except Seamless admits that it is Delaware limited liability company with a place of business in New York.

### Jurisdiction and Venue

3. Denied, except Seamless admits that Ameranth's First Amended Complaint purports to set forth a cause of action for patent infringement.

4. Denied, except Seamless admits that this Court has subject matter jurisdiction over Ameranth's patent dispute with Seamless.

5. Denied, except Seamless admits that it operates a food ordering service in the United States.

6. Denied.

7. Denied.

### Background

8. Seamless lacks knowledge or information sufficient to form a belief as to the

allegations of Paragraph 8, and on that basis denies them.

9.  Seamless lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 9, and on that basis denies them.

10.  Denied.

11.  Denied.

<u>Related case</u>

12.  Seamless lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 12, and on that basis denies them.

13.  Denied.

<u>COUNT ONE</u>

<u>U.S. Patent No. 8,146,077</u>

14.  Seamless incorporates by reference its responses to the allegations of Paragraphs 1-13 above.

15.  Denied, except Seamless admits that U.S. Patent No. 8,146,077 ("the '077 patent") bears on its face March 27, 2012 as its issue date, and indicates on its face "Information Management and Synchronous Communication System with Menu Generation" as its title, and that a document purported to be the '077 patent is attached to the First Amended Complaint.

16.  Seamless lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 23, and on that basis denies them.

17.  Denied.

18.  Denied.

19.  Denied.

20.  Denied.

21.  Denied.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

Prayer for Relief

Seamless denies that Ameranth is entitled to any of the relief sought in Paragraphs 1-9 of its prayer for relief against Seamless, and requests that the court deny all such relief to Ameranth in its entirety and with prejudice, and that Ameranth take nothing.

## II. DEFENSES

In further answering Ameranth's First Amended Complaint, Seamless pleads the following defenses and/or affirmative defenses, without admitting that Seamless would bear the burden of proof on any of the following:

Failure to State a Claim

27. The First Amended Complaint fails to state a claim upon which relief can be granted.

No Infringement

28. Seamless has not willfully, intentionally, recklessly, knowingly, or otherwise infringed (literally or by equivalents), induced infringement of, or contributed to the infringement of any valid and enforceable claim of the '077 patent as properly construed.

No Divided Infringement

29. To the extent Ameranth alleges a theory of divided infringement of multiple actors, Seamless lacks the requisite direction or control over the activities of other required actors, and thus Seamless has not infringed, individually or jointly, any valid and enforceable claim of '077 patent as properly construed.

<u>Laches/Equitable Estoppel</u>

30. On information and belief, all or some of Ameranth's claims for relief are barred by the doctrine of laches and/or equitable estoppel.

<u>Limit on claims for relief/costs</u>

31. Ameranth's claims for relief are limited by 35 U.S.C. §§ 286 and 287, and Ameranth's recovery of costs is limited under 35 U.S.C. § 288.

<u>Failure to Mark</u>

32. To the extent that Ameranth and/or its alleged predecessors in interest to the '077 patent failed to comply with the marking and/or notice provisions of 35 U.S.C. § 287, Ameranth's claims for relief are barred, in whole, or in part.

<u>Practicing the Prior Art</u>

33. On information and belief, the allegedly infringing activities of Seamless embody in all relevant respects, methods that constitute prior art.

<u>Prosecution History Estoppel</u>

34. On information and belief, all or some of Ameranth's claims for relief are barred by the doctrine of prosecution history estoppel.

<u>No Willful Infringement</u>

35. Ameranth's allegations of willful infringement against Seamless which are based on activities occurring after receiving notice of this action fail as a matter of law.

<u>Prosecution Laches</u>

36. On information and belief, all or some of Ameranth's claims for relief are barred by the doctrine of prosecution laches.

<u>Lack of Personal Jurisdiction/Venue</u>

37. This Court lacks personal jurisdiction over Seamless and/or venue is improper.

<u>Unclean Hands</u>

38.  On information and belief, Ameranth's claims for relief are barred due to unclean hands.

<u>Inequitable Conduct</u>

39.  All claims of the '077 patent are unenforceable due to inequitable conduct during the prosecution of the '077 patent by Michael D. Fabiano ("Fabiano"), who acted as prosecution counsel for Ameranth before the PTO, and/or Keith McNally ("McNally"), a named inventor and officer of Ameranth.

40.  On February 2, 2010, McNally, who was then Chief Executive Officer of Ameranth, executed a power of attorney allowing Fabiano of Mazzarella Caldarelli LLP to represent Ameranth before the PTO regarding the prosecution of the '077 patent.

41. During the prosecution of the '077 patent, McNally executed no fewer than 4 declarations and participated in multiple interviews between Ameranth and the PTO.

42. McNally stands to benefit financially from any licensing fees or other revenue generated by the '077 patent.

43. On information and belief, McNally was significantly involved in the prosecution of the '077 patent.

44. Fabiano was retained by Ameranth to represent Ameranth both in the prosecution of the '077 patent and the litigation of the '077 patent.

45. Fabiano stands to benefit financially from any licensing fees or other revenue generated by the '077 patent.

46.  Fabiano was significantly involved in the prosecution of the '077 patent.

47. On February 2, 2012, Examiner Matthew Brophy ("Brophy") issued a notice of allowance after entering an earlier Examiner's amendment, and on March 27, 2012, the '077

patent was issued.

48. Examiner Brophy primarily handled the examination of the '077 patent.

49. Previously, on July 26, 2005, a different but related U.S. Patent application, U.S. Pat. Appl. 11/190,633 ("the '633 application") was filed on behalf of Ameranth. Both the '077 patent and the '633 application stem from and claim priority to U.S. Patent No. 6,384,850 ("the '850 patent"). The '077 patent and the '633 application share substantially the same specification.

50. Examination of the '633 application has primarily been handled by a different U.S. patent examiner, Examiner Rutao Wu ("Wu").

51. In an office action dated January 7, 2010, Examiner Wu rejected all claims then pending of the '633 application. A copy of the office action is attached as Exhibit A.

52. In the Jan. 7, 2010 office action, Examiner Wu rejected the claims of the '633 application as obvious over U.S. Patent No. 7,069,228 ("Rose") in view of U.S. Patent No. 6,415,138 ("Sirola").

53. Examiner Wu essentially argued that the web server of Rose served up hospitality information in accordance with the claimed elements, and that it would have been obvious to use the smart phone of Sirola to display the hospitality information served by Rose's web server using a web browser into the smart phone. See Exhibit A at 2-4, 6-7.

54. On information and belief, Fabiano or another attorney of Ameranth discussed the January 7, 2010 office action with McNally and made him aware of Rose and Sirola, and the Examiner's arguments against patentability.

55. On July 2, 2010, McNally, who was then President of Ameranth, executed a power of attorney allowing Fabiano to prosecute the '633 application.

56. On July 2, 2012, Fabiano filed a response to the rejection of all of Ameranth's pending claims.

57. The July 2, 2012 response presented detailed arguments attempting to distinguish Ameranth's alleged invention claimed in the '633 application from Rose, Sirola, and the other cited art. The July 2, 2012 response added a limitation to claims 77 and 97 that required that hospitality information be displayed on "non PC standard display sizes" including display on the wireless handheld computing device.

58. In an office action dated October 5, 2010, attached as Exhibit B, Examiner Wu continued to reject all of Ameranth's claims. Examiner Wu continued to rely on the combination of Rose and Sirola. Examiner Wu "fully considered" Ameranth's arguments filed July 2, 2010 but determined they were "not persuasive."

59. On October 26, 2010, Fabiano filed a response to the October 5, 2010 rejection.

60. The October 26, 2010 response presented additional detailed arguments attempting to distinguish Ameranth's alleged invention claimed in the '633 application from Rose, Sirola, and the other cited art.

61. Further, on November 16, 2010, Fabiano held a telephonic interview with Examiner Wu during which Rose was discussed.

62. In addition, on December 8, 2010, Fabiano filed a supplemental response presenting additional arguments attempting to distinguish Ameranth's alleged invention from Rose, Sirola, and the other cited art.

63. On February 15, 2011 Examiner Wu issued a Final Office Action rejecting all of pending claims of the '633 application. A copy of the February 15, 2011 Final Office Action attached as Exhibit C.

64. In the February 15, 2011 Final Office Action, Examiner Wu maintained Rose as the primary reference, and maintained the combination with Sirola. A new combination with U.S. Patent No. 6,356,543 ("Hall") was added as well. Examiner Wu set forth detailed rebuttals to

Ameranth's arguments.   See Exhibit C (FOA), pp. 3-13.

65. Ameranth appealed Examiner Wu's decision.  Ameranth filed its Appeal Brief on March 30, 2011.  Examiner Wu filed an Examiner's Answer on June 6, 2011, attached hereto as Exhibit D.  Ameranth filed its reply brief on Aug. 4, 2011.  From the time the '077 patent was first filed, on April 22, 2005, until it was issued on March 27, 2012, none of Examiner Wu's rejections and none of the briefing of the appeal of the '633 application was submitted to the Patent Office in the prosecution of the '077 patent for consideration by Examiner Brophy.

66.  Rose, Sirola, and Hall are attached hereto as Exhibits E, F, and G, respectively.

67. Hall discloses a phone that can be used to download applications.  See Exhibit C (FOA), p. 15; Exhibit G (Hall) at 2:25-27.  It would have been obvious to a person of skill in the art at the time of the alleged invention claimed in the '077 patent to extend Hall to allow the download of an application to a smart phone or a wireless handheld computing device, which enables a web service interface with the web applications of Rose.

68. Examiner Brophy's reasons for allowance for the '077 patent read as follows:  "none of the prior art of record, alone or in reasonable combination, teach the limitations:  wherein the system is further enabled to automatically format the programmed handheld menu configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system, and wherein a cascaded set of linked graphical user interface screens for a wireless handheld computing device in the system includes a different number of user interface screens from at least one other wireless handheld computing device in the system. When combined with the other limitations of claim 103, 118 and 122.  Specifically in these independent claims, the menu generation software and hospitality applications, in the context of the claimed system, which automatically create programmed handheld displayed as cascaded sets

of graphical user interface screens for at least two different sizes and including at least two cascaded sets of GUIs with disparate screen counts is not found in the prior art as of the priority date September 21, 1999. No prior art of record, nor any obvious combination [] teaches all limitations of the newly amended independent claims."

69. The combination of Rose, Sirola, and Hall speaks directly to the limitations that caused Examiner Brophy to issue the '077 patent, and thus are necessarily not cumulative to the art that was before him. In particular, Rose discloses that it serves up hospitality content using a web server as a series of related hospitality web pages. See Exh. E (Rose), Figs. 5A – 22; Exh. C (FOA), pp. 4-5, 11-15; Exh. D (Examiner Answer), pp. 4-5, 13-29. The content of Rose, can be displayed by any conventional web browser. See Exh. C (FOA), pp. 4-5, 11-15. Rose also discloses in claim 86 "a computing device coupled to the Internet using a wireless device." Sirola and Hall both disclose wireless handheld computing devices that can be used to display the web pages served by the web server of Rose. See Exh. F (Sirola), 2:1-11, and Exh. G (Hall), Abstract. Both Sirola and Hall disclose separate wireless handheld computing devices that can be used to display hospitality information. See Exh. C (FOA), pp. 12-13, 15; Exh. F (Sirola), Fig. 1; Exh. G (Hall), Fig. 1. Based on the individual screen sizes and resolutions of the phones of Sirola and Hall, the web pages will appear different from one another. Compare Exh. F (Sirola), Fig. 1 with Exh. G (Hall), Fig. 1. Accordingly, the combination of Rose, Sirola, and Hall makes obvious the very limitations that Ameranth utilized to gain allowance. See Exh. C (FOA), pp. 3-5, 11-15; Exh. D (Examiner Answer), pp. 5-6, 16-21; see especially p. 19-20. In addition, because Examiner Wu applied Rose, Sirola, and Hall in the '633 application to similar claim limitations and pointed out specifically where in Rose, Sirola, and Hall such limitations were present, Fabiano and McNally knew of the specific disclosures contained in Rose, Sirola, and Hall.

70. In fact, the combination of Rose, Sirola, and Hall makes obvious the entirety of at least claim 13 of the '077 patent. Accordingly, the '077 patent would not have issued if Fabiano and McNally had fulfilled their duty to disclose to Examiner Brophy these references, as well as the Final Office Action of February 15, 2011 and Examiner Wu's Answer.

71. The analysis of Examiner Wu, as embodied by the Final Office Action of February 15, 2011 (Exh. C), and the Examiner's Answer to Ameranth's Appeal Brief (Exh. D) contain Examiner Wu's detailed analysis as to how to apply Rose, Sirola, and Hall to claims that are substantially similar to those that issued in the '077 patent. Examiner Wu's analysis of the claim elements of claims 77 and 97 requiring the display of hospitality data on "non PC standard display sizes" speaks directly to how Examiner Brophy could have applied Rose, Sirola, and Hall to reject at least claim 13 of the '077 patent.

72. The preamble of claim 13 requires "[a]n information management and real time synchronous communications system for use with wireless handheld computing devices and the internet comprising:." This limitation can be found in Rose at the Abstract and 2:24-35.

73. Element 'a' of claim 13 requires "a master database connected in said system and configured to store hospitality application information pursuant to a master database file structure." This limitation is found in Rose at Fig. 4, 6:44-55. Examiner Wu found the similar element "a master database containing at least one hospitality application(s) and associated data" in Rose at 6:44-55; see also Exh. C (FOA), p. 14; Exh. D (Examiner Answer), p. 5.

74. Element 'b' of claim 13 requires "at least one wireless handheld computing device connected in said system and configured to display said hospitality application information." The combination of Rose and Sirola discloses this limitation. See Rose, Figs. 5A-22, 7:23-25, claim 86; Sirola, Fig. 1, 2:1-21. Examiner Wu found that the combination of Rose and Sirola discloses "application software enabled to configure hospitality data for display on the 'non pc

- 11 -

standard' display sized screen of at least one wireless handheld computing device in which the at least one hospitality application is stored." In particular, Examiner Wu found that Rose disclosed "application software enabled to configure hospitality data for display on at least one web page" at Figs. 5A-22 and 7:23-25, and that Sirola discloses a smart phone device (which is a wireless handheld computing device with non pc standard display) that is capable of displaying web data at 2:1-21. See Exh. C (FOA), pp. 14-15, and Exh. D (Examiner Answer), pp. 5-6.

75. Element 'c' of claim 13 requires "at least one web server connected in said system." Rose discloses this limitation at Fig. 3, 6:60-64. Examiner Wu found that Rose discloses "at least one web server enabled to interface with at least one hospitality applications and its associated data" at 6:60-64. See Exh. C (FOA), p. 14, Exh. D (Examiner Answer), p. 5.

76. Element 'd' of claim 13 requires "at least one web page connected in said system and configured to display said hospitality application information." Rose discloses this limitation at Figs. 5A-22, 7:23-25. Examiner Wu found that Rose discloses "application software enabled to configure hospitality data for display on at least one web page" at Figs. 5A-22; and 7:23-25. See Exh. C (FOA), p. 14; Exh. D (Examiner Answer), p. 5.

77. Element 'e' of claim 13 requires "real time communications control software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page." The combination of Rose, Sirola, and Hall discloses this limitation. See Rose at Figs. 4, 23-24, 5A-22, 2:26-29, 6:4-34, 10:59-67, 16:1-17:18, Sirola, Fig. 1, 2:1-21, Hall, Fig. 1, 3:49-4:37. Examiner Wu found that the combination of Rose, Sirola, and Hall discloses "wherein the system is enabled via application software to synchronize the at least one hospitality application(s) and its associated data with the data in a second and different hospitality application in real time between the master database, the at least one Web server, the at least one wireless computing device and the

- 12 -

at least one web page." See Exh. C (FOA), pp. 14-15; Exh. D (Examiner Answer), pp. 5-6.

78. Claim 13 requires "wherein the communications control software is enabled to utilize parameters from the master database file structure to synchronize the hospitality application information in real time between the master database, at least one wireless handheld computing device, at least one web server and at least one web page such that substantially the same information comprising the hospitality information is capable of being displayed on the wireless handheld computing device, at least one web page and other display screens of the synchronized screen, such that the hospitality application information is synchronized between any connected users." The combination of Rose, Sirola, and Hall discloses this limitation. See Rose at Figs. 4, 23-24, 5A-22, 2:26-29, 6:4-34, 10:59-67, 16:1-17:18, Sirola, Fig. 1, 2:1-21, Hall, Fig. 1, 3:49-4:37.

79. Claim 13 requires "wherein the communication control software is enabled to act as a real time interface between the elements of the system and any applicable communications protocol." Examiner Wu found that Rose discloses "wherein the system is enabled to perform an automated communications conversion via application software involving the data associated with the at least one hospitality application" at 7:42-55. See Exh. C (FOA), p. 14, Exh. D (Examiner Answer), p. 5.

80. Claim 13 requires "wherein the communications control software is enabled to automatically and simultaneously configure the hospitality application information for display on both the wireless handheld computing device and the web page in conformity with a customized display layout unique to the wireless handheld computing device or the web page, wherein said customized display layout is compatible with the displayable size of the handheld computing device display screen or the web page." The combination of Rose, Sirola and Hall discloses this limitation. See Rose at Figs. 4, 23-24, 5A-22, 2:26-29, 6:4-34, 10:59-67, 16:1-17:18, Sirola, Fig.

1, 2:1-21, Hall, Fig. 1, 3:49-4:37.

81. Claim 13 requires "wherein the communications control software is further enabled to automatically format a programmed handheld configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system." As addressed previously, Examiner Wu spoke directly to this limitation; see supra Paragraphs 68–71. With regards to the limitation "cascaded sets of linked graphical user interface screens," this limitation is seemingly discussed in the '077 patent at 6:37-53. Rose discloses multiple sets of such screens at Figs. 5A-22. In addition, the combination of Rose, Sirola, and Hall discloses this limitation. See Rose at Abstract, Figs. 3-4, 23-24, 5A-22, 6:4-34, 6:60-64, 7:23-25, 10:59-67, 16:1-17:18; Sirola at Fig. 1, 1:1-21; Hall at Fig. 1, 3:49-4:37.

82. Claim 13 requires "wherein a cascaded set of linked graphical user interface screens for a wireless handheld computing device in the system includes a different number of user interface screens from at least one other wireless handheld computing device in the system." As addressed previously, Examiner Wu spoke directly to this limitation; see supra Paragraphs 68–71. In addition, the combination of Rose, Sirola, and Hall discloses this limitation. See Rose at Abstract, Figs. 3-4, 23-24, 5A-22, 6:4-34, 6:60-64, 7:23-25, 10:59-67, 16:1-17:18; Sirola at Fig. 1, 1:1-21; Hall at Fig. 1, 3:49-4:37; in particular, compare Sirola, Fig. 1 with Hall, Fig. 1.

83. Claim 13 requires "wherein the system is enabled for real time synchronous transmission of the configured hospitality application information to the wireless handheld computing device, the web server and the web page and real time synchronous transmissions of inputs responding to the configured hospitality application information from the wireless handheld computing device, or the web server or the web page." The combination of Rose, Sirola, and Hall discloses this limitation. See Rose at Abstract, Figs. 3-4, 23-24, 5A-22, 6:4-34,

6:60-64, 7:23-25, 10:59-67, 16:1-17:18; Sirola at Fig. 1, 1:1-21; Hall at Fig. 1, 3:49-4:37;

84. On information and belief, McNally became aware of Rose and Sirola sometime before Fabiano filed the response on July 2, 2010.

85. Fabiano became aware of Rose and Sirola sometime before July 2, 2010.

86. A period of almost two years passed between July 2, 2010 and the issuance of the '077 patent on March 27, 2012.

87. Fabiano became aware of Hall and the Final Office Action of February 15, 2011 sometime before March 30, 2011.

88. On information and belief, Fabiano or another of Ameranth's attorney's made McNally aware of Hall and the Final Office Action of February 15, 2011 sometime before March 30, 2011.

89. Fabiano became aware of the Examiner's Answer to Ameranth's Appeal Brief sometime before August 4, 2011.

90. On information and belief, Fabiano or another of Ameranth's attorneys made McNally aware of the Examiner's Answer to Ameranth's Appeal Brief sometime before August 4, 2011.

91. Fabiano could have submitted for Examiner Brophy's consideration and to be made of record in the file history of '077 patent, Rose, Sirola, and Hall, as well as the Feb. 15, 2011 Final Office Action and the June 6, 2011 Examiner's Answer.

92. The claims of the '077 patent and the pending claims of the '633 application that have been rejected in view of Rose, Sirola, and Hall contain numerous similar limitations.

93. The preamble of claim 13 of the '077 patent reads "An information management and real time synchronous communications system for use with wireless handheld computing devices and the internet comprising:." The preamble of claims 77 and 97 of the '633 application is

- 15 -

identical to the preamble of claim 13 of the '077 patent.

94. Element (a) of claim 13 of the '077 patent reads "a master database connected in said system and configured to store hospitality application information pursuant to a master database file structure." Element (a) of claim 77 of the '633 application reads "a master database containing at least one hospitality application(s) and associated data." Element (a) of claim 97 of the '633 application reads "a master database containing hospitality applications and associated data."

95. Element (b) of claim 13 of the '077 patent reads "at least one wireless handheld computing device connected in said system and configured to display said hospitality application information." Element (b) of claim 77 of the '633 application reads "application software enabled to configure hospitality data for display on the 'non pc standard' display sized screen of at least one wireless handheld computing device in which the at least one hospitality application is stored." Element (b) of claim 97 of the '633 application reads "data application software enabled to configure hospitality data for display on the 'non pc standard' display sized screen of at least one wireless handheld computing device in which the at least one hospitality application is stored."

96. Element (c) of claim 13 of the '077 patent reads "at least one web server connected in said system." Element (c) of claim 77 of the '633 application reads "at least one Web server enabled by application software to interface with at least one hospitality application and its associated data." Element (c) of claim 97 of the '633 application reads "at least one Web server enabled by application software to interface with at least one hospitality applications and associated data."

97. Element (d) of claim 13 of the '077 patent reads "at least one web page connected in said system and configured to display said hospitality application information." Element (d) of

- 16 -

claim 77 of the '633 application reads "application software enabled to configure hospitality data for display on at least one web page."

98. Element (e) of claim 13 of the '077 patent reads "real time communications control software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page." The second wherein clause of claim 77 of the '633 application reads "wherein the system is enabled via application software to synchronize the at least one hospitality application(s) and its associated data with the data in a second and different hospitality application in real time between the master database, the at least one Web server, the at least one wireless computing device and the at least one web page." The first wherein clause of claim 97 of the '633 application reads "wherein the system is enabled by application software to synchronize the at least one hospitality application and data in real time between the master database, the at least one wireless handheld computing device, the at least one Web server and the at least one Web page."

99. The second wherein clause of claim 13 of the 'patent reads "wherein the communications control software is enabled to act as a real time interface between the elements of the system and any applicable communications protocol." The third wherein clause of claim 77 of the '633 application reads "wherein the communications control module is enabled via application software to act as an interface between the at least one hospitality application(s) and any applicable communications protocol." The second wherein clause of claim 97 of the '633 application reads "wherein the communications control module is also enabled via application software to act as an interface between the at least one hospitality applications and any applicable communications protocol."

100. Given the significant similarity between the rejected claims of the '633 application

and the claims of the '077 patent, Rose, Sirola, and Hall, as well Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of Feb. 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief would have been material to the prosecution of the '077 patent. This information was not cumulative to the art that was before Examiner Brophy at least because they speak directly to, and/or disclose the very same features suggested as missing in, Examiner Brophy's reasons for allowance. Moreover, no reference or combination of references had been used by another PTO examiner to reject co-pending claims that were substantially similar to those that issued with the '077 patent. In addition, since Examiner Wu has maintained his rejections all the way through appeal to claims of the '633 application that are similar to those in the '077 patent, and because the '633 application contains a substantially similar specification as the '077 patent, Rose, Hall, and Sirola are necessarily not cumulative. Thus, the claims of the '077 patent would not have issued if Examiner Brophy had been made aware of Rose, Sirola, and Hall, and Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of Feb. 15, 2011, as well as the Examiner's Answer to Ameranth's Appeal Brief.

101. Prior to February 3, 2012, Fabiano became aware that Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief, were material to the prosecution of the '077 patent.

102. Prior to February 3, 2012, McNally became aware that Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief, were material to the prosecution of the '077 patent.

103. Fabiano had a duty under 37 CFR § 1.56 to disclose to the PTO all material information to prosecution of the '077 patent.

104. McNally had a duty under 37 CFR § 1.56 to disclose to the PTO all material information to prosecution of the '077 patent.

105. Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief are not listed on any information disclosure statement submitted by Ameranth during prosecution of the '077 patent.

106. Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief were not cited by Examiner Brophy during prosecution of the '077 patent.

107. Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief were not disclosed to the PTO during the prosecution of the '077 patent.

108. On information and belief, Fabiano made a deliberate decision to withhold Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief from the PTO during the prosecution of the '077 patent.

109. On information and belief, McNally made a deliberate decision to withhold Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief from the PTO during the prosecution of the '077 patent.

110. On information and belief, Fabiano intentionally withheld Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief from the PTO during the prosecution of the '077 patent with the specific intent to deceive the PTO.

111. On information and belief, McNally intentionally withheld Rose, Sirola, Hall, the

Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief from the PTO during the prosecution of the '077 patent with the specific intent to deceive the PTO.

112. By not disclosing Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief during the prosecution of the '077 patent, Fabiano breached his duty of good faith and candor in dealing with the PTO under 37 CFR § 1.56.

113. By not disclosing Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief during the prosecution of the '077 patent, McNally breached his duty of good faith and candor in dealing with the PTO under 37 CFR § 1.56.

114. The '077 patent would not have issued if Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief had been disclosed to Examiner Brophy.

115. Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief satisfy the "but-for" materiality test because the PTO would not have allowed the claims of the '077 patent had it been aware of this information.

116. All of the claims of the '077 patent are unenforceable due to Fabiano's and/or McNally's inequitable conduct during the prosecution of the '077 patent.

<u>Invalidity</u>

117. Seamless incorporates by reference the allegations of Paragraphs 39–116 of its Answer.

118. The '077 patent is invalid for failure to comply with the statutory requirements of one or more of the provisions in Title 35 of the United States Code, including §§ 101, 102, 103,

112, and/or 116.

119. All of the claims of the '077 patent are invalid for failing to satisfy the written description and/or enablement requirement of section 112.

120. After rejecting the claims on multiple occasions Examiner Brophy eventually contacted Ameranth's prosecution counsel with a proposed examiner amendment.

121. That amendment included adding the limitation to pending claim 103: "wherein the system is further enabled to automatically format the programmed handheld menu configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system, and wherein a cascaded set of linked graphical user interface screens for a wireless handheld computing device in the system includes a different number of user interface screens from at least one other wireless handheld computing device in the system."

122. Substantially similar amendments were proposed for the other independent claims.

123. These claim limitations are not supported by the '077 patent specification, or the ultimate parent application the '850 patent. Thus, all claims fail to satisfy section 112 of the patent act and are thus invalid. In addition, all claims fail to satisfy section 102(f) and/or section 116 for the same reasons and are thus invalid.

<u>Additional Defenses</u>

124. Seamless reserves the right to assert any other defenses that discovery may reveal.

### III. COUNTERCLAIMS

Seamless hereby alleges the following Counterclaims against Ameranth:

<u>The Parties</u>

1. Seamless North America, LLC ("Seamless") is a Delaware limited liability company having its principal place of business in New York, New York. Seamless operates a food

ordering system that links companies and individuals with local restaurants and caterers.

2. Upon information and belief, Ameranth, Inc. ("Ameranth") is a Delaware corporation having its principal place of business in San Diego, California.

<u>Jurisdiction and Venue</u>

3. Seamless' Counterclaim arises under the United States Patent Act, 35 U.S.C. §1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The Court has subject matter jurisdiction over Seamless' Counterclaim pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has personal jurisdiction over Ameranth, and venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).

<u>Background</u>

4. On March 27, 2012, Ameranth filed a complaint for patent infringement against Seamless in this case. On May 14, 2012, Ameranth filed a first amended complaint. The First Amended Complaint alleges that Seamless infringes one or more claims of the '077 patent.

5. Ameranth alleges that it is the owner of the '077 patent.

6. On March 27, 2012, Ameranth initiated this action against Seamless.

7. An actual and justiciable controversy exists between Seamless and Ameranth as to whether or not the claims of the '077 patent are invalid.

<u>COUNT ONE</u>

<u>DECLARATION OF UNENFORCEABILITY</u>

8. Seamless incorporates by reference the allegations of Paragraphs 39–116 of its Answer and Paragraphs 1-7 of its Counterclaim.

9. All claims of the '077 patent are unenforceable due to inequitable conduct of one or more of the inventors or prosecuting attorneys.

10. Pursuant to 28 U.S.C. §§ 2201 and 2202, Seamless is entitled to a declaratory

judgment that all claims of the '077 patent are unenforceable.

## COUNT TWO

## DECLARATION OF INVALIDITY

11. Seamless incorporates by reference the allegations of Paragraphs 39–123 of its Answer and Paragraphs 1-7 of its Counterclaim.

12. One or more claims of the '077 patent are invalid for failure to comply with 35 U.S.C. §§ 101, 102, 103, 112, and/or 116.

13. Pursuant to 28 U.S.C. §§ 2201 and 2202, Seamless is entitled to a declaratory judgment that one or more claims of the '077 patent are invalid in part or in whole.

### Prayer for Relief

For these reasons, Seamless respectfully prays for the following relief:

a. Declaratory judgment that one or more claims of the '077 patent are invalid and/or unenforceable;

b. Judgment against Ameranth dismissing the First Amended Complaint and denying with prejudice all relief requested in Ameranth's First Amended Complaint and its prayer therein, such that Ameranth takes nothing;

c. Judgment that this case is an exceptional case under 35 U.S.C. § 285 and/or other applicable laws;

d. Judgment awarding Seamless its costs and attorneys' fees; and

e. Judgment awarding Seamless such other relief the Court deems just, equitable, and proper.

<u>Jury Demand</u>

Seamless demands a trial by jury on all issues so triable.

Respectfully submitted,

BAKER BOTTS L.L.P.

DATED:   August 3, 2012        By:   _/s/ Eliot D. Williams_____
                                        Robert C. Scheinfeld
                                        Eliot D. Williams
                                        Eric J. Faragi

                                        Attorneys for Defendant
                                        Seamless North America, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will be served electronically to designated CM/ECF participant counsel through the Court's electronic filing system.

DATED:   August 3, 2012        By:   _/s/ Eliot D. Williams_____
                                        Eliot D. Williams
                                        E-mail:  eliot.williams@bakerbotts.com